Cooke, J. (dissenting).
The issue in this case is not whether defendant’s .guilt .was proved beyond a reasonable doubt, which it wás, but whether he was denied a fair trial, which I believe, he was. As in so many of the criminal cases confronted^by appellate courts, the question we must answer is whether the manner in which a conviction was obtained is consistent with fundamental principles of fairness which lie at the heart of our system of criminal justice. (See dissent in People v. Crimmins, 36 N Y 2d 243.)
I agree with the majority of this court that it was error to prohibit defendant from offering rebuttal evidence to- explain the existence of some of the bank accounts about which he testified on cross-examination, but disagree over the "consequences of that error.
The effect of the testimony elicited upon cross-examination of defendant was to demonstrate to the jury that, as a probationary police officer, earning" approximately $9,000 per year and contributing approximately $80. per month to the support of his mother and sister, he had accumulated " over $49,000 ” in bank accounts in his name. Defendant professed to have no knowledge of these accounts and. expressed shock and surprise at their existence. When defense counsel attempted to put defendant’s mother on the stand, the prosecutor successfully objected to her testimony as “ not competent ”. Thereafter, counsel made an offer of proof that defendant’s mother, 'if permitted, would testify to the circumstances surrounding the deposits in three of the accounts mentioned. The prosecutor objected that “ the issue is totally collateral ” and was sustained, the court-having previously stated:." You cannofpput aydtnesS on', on a collateral matter that has already.been, decided [sic]. X will not permit you to do it, ’ ’
*197 Defendant was thus effectively prevented from explaining the source of these large amounts of money of which he claimed to have no personal knowledge. The clear implication of this evidence was that these several bank accounts contained the fruits of defendant’s extracurricular activity of trafficking in illicit drugs. Lest the inference prove too much for the jury, the prosecutor, in summation, emphasized it thus: ‘ ‘ He is a defender and he spreads this garbage, this vermin, this disease. That is what he lives on. That is what this whole case is about ” (emphasis supplied).
The only real issue in this case was credibility, the defendant attempting to explain his actions in a manner consistent with innocence, while the People attempted to prove that he was involved in the sale of narcotics. The unexplained existence of large sums of money in several bank accounts in his name surely must have had an impact upon the jury in their assessment of his credibility, aside from providing some circumstantial evidence of guilt.
It is not for this court to speculate whether, even with the proffered explanation of the innocent source of this money, the verdict would have remained unchanged (People v. Mleczko, 298 N. Y. 153,162). It is significant, however, that the unexplained testimony materially strengthened the People’s case. What the court said in People v. Mleczko (supra, p. 162) is instructive in determining whether the error was technical ot whether it affected defendant’s substantial rights (CPL 470.05, subd. 1):
‘ ‘ An appellate court is directed to disregard ‘ technical errors * * * which do not affect * * * substantial rights ’ (Code Crim. Pro., § 542). Manifestly, the Legislature could never have purposed that the court should regard errors as technical, no matter how grave or substantial they may be, upon the hypothesis that, in any event, the jury correctly decided the case. Such a course would tend to abolish ‘ all forms of law taught by experience to be necessary to the protection of the innocent ’. (People v. Marendi, 213 N. Y. 600, 619, supra.) What the Court wrote in that case some years ago is just as true today: ‘ where prejudicial matter is erroneously received in evidence on a disputed question of fact, its harmful character cannot be determined solely by the mere weight of competent *198 evidence unless we are to resolve ourselves into a jury and, ignoring the finding upon incompetent evidence, substitute one upon the evidence which we may deem competent.’ (People v. Marendi, supra, p. 619; see, also, People v. Pignataro, 263 N. Y. 229, 240, supra; People v. Sobieskoda, 235 N. Y. 411, 420.)
“ Though there may be no yardstick to measure error and differentiate between the technical and the substantial, an underlying and controlling principle is at hand. If study of the case on appeal persuades the court that the minds of the jurors were clearly directed to the true issue involved, that they were not misled or confused to defendant’s detriment, then the mandate of section 542 should be followed — even though the appellate judges may disagree with the verdict at which the jury arrived. On the other hand, if the court believes that the errors may have misled the jury, may have influenced the verdict, then the error may not be deemed 'technical, and a reversal '(will follow — even though the court may conclude that the jury properly decided the case on the evidence adduced.” (Emphasis supplied.)
Excessive reliance on the existence of other proof of guilt, in the face of clearly prejudicial error, could lead to harm for it would seem to encourage an overly zealous prosecutor with a strong case to gratuitously prejudice defendant’s rights by unfair tactics in an attempt to insure conviction. It is important to the proper administration of justice that appellate sanctions remain an ever-present deterrent to restrain an excessively eager prosecutor from casting caution (and defendant’s rights) to the winds in the performance of his difficult duties. Applying the “ harmless error ” doctrine with too broad a sweep would remove one of the chief deterrents to overreaching by a prosecutor. The sparing use of that doctrine is essential to compel respect for the constitutional guaranty of a fair trial — by removing the incentive to disregard it (cf. Elkins v. United States, 364 U. S. 206, 217). Additionally, the application of the harmless error doctrine is particularly inappropriate in this case as it comes perilously close to announcing a “ doctrine that the fundamentals of a fair trial need not he respected if there is proof in the record to persuade us of defendant’s guilt ” (People v. Mleczko, supra, p. 163; People v. Mirenda, 23 N Y 2d 439, 447; People v. Steinhardt, 9 N Y 2d 267).
*199 Since the conceded error here may well have influenced the verdict, it cannot be treated as harmless. I would therefore reverse the order and grant a new trial.
Chief Judge Breitel and judges Jasen, Gabrielli, Jones and Wachtler concur in Per Curiam opinion; Judge Cooke dissents and votes to reverse in a separate opinion in which Judge Fuchsberg concurs.
Order affirmed.